## Hoff and others *vs.* Tobey and others.

A deed, executed to the defendants' grantors in 1854, purported to convey lots one and two on the easterly side of a mill canal or race, in the village of Fulton, as the same were laid down on a certain map of said village, "between the mill canal and the Oswego canal, on block 19." No water rights or conditions whatever, relating to the mill canal or race, were contained in such deed. The maps referred to, however, showed lots one and two to be bounded, on the westerly side, by the mill canal or race; and the grantees claimed that, by force of that circumstance, they took to the centre of the mill-race. In 1871, the plaintiffs received a deed from the common source of title, conveying to them the entire bed of the mill canal, fronting their premises, which were opposite lot two, so owned by the defendants. *Held*, that the defendants, by the deed of 1854, took no title to any part of the mill canal, that being merely an artificial reservoir, for the supply of mills, and not a natural stream; and that the referee properly decided that the plaintiffs were the owners in fee of the land covered by the water in such canal.

The presumption that a conveyance to the centre line was intended arises only when the grantor is owner of the fee to the centre line. It does not arise where land is bounded by a body of water which is contained in an artificial reservoir constructed for purposes wholly irrespective of any connection with the premises conveyed by the deed to which the presumption is sought to be applied; and when such a presumption would be inconsistent with the uses and purposes for which it is obvious the way or water reservoir was created.

APPEAL from a judgment rendered on the report of a referee.

*S. N. Dado*, for the appellants.

*E. S. Pardee*, for the respondents.

*By the Court*, TALCOTT, J. Many years ago the grantors of both parties constructed an aqueduct, or canal, as a mill-race, leading out of the Oswego canal in the village of Fulton. This was constructed by the erection of a wall on the westerly and lower side, the natural rock and bank on the upper and easterly side constituting the wall on that side. The said grantors at the time of the construction of the mill-race owned the fee of the land in and on which it was constructed,

on both sides. The apparent design of the plaintiffs in the construction of this race, was to utilize the water power which would thus be created along the westerly line of the race, and they commenced to sell and did sell premises along the said westerly line of the race, bounding by a line along the top of the artificial wall, together with the right to draw the water from the race in the proportions mentioned in the respective deeds, with the right to discharge the water, so drawn, across the premises still westerly and below the premises so conveyed. In the grant under which the plaintiffs claim, the grantors imposed upon the grantees the duty and burthen of keeping the canal for a distance coextensive with the granted premises, in repair, and the gates at the aperture, where the grantees were to draw water, and one-eighth of the expense of keeping in repair the bulkhead and necessary fixtures at the head of the canal and a bridge of the canal across Oswego street, and one-eighth of the expense of keeping the canal in repair within the space occupied by the crossing of Oswego and Oneida streets. By the same conveyance the grantors bound themselves to keep the residue of the canal in repair until the other lots should be sold, and in selling the other lots to bind the purchasers to keep their proportion of the canal in repair by covenants which should be a lien on the property sold, so that the same could be enforced by the grantees in this deed named. And it was further provided, that when the residue of the lots should be sold, and the purchasers bound as provided in this deed, for their proportion of repairs, then the grantors were to be released from their obligation to repair. This deed was made in June, 1849.

Subsequent conveyances appear to have been made of the whole or a part of the lots on the west side of the race, with water rights, and upon similar covenants and conditions. Whether the whole of the lots on the westerly side have thus been conveyed does not appear.

The lots on the east side of the race, or some of them, have been sold. In March, 1854, the same grantors conveyed to the grantors of the defendants lots one and two, on the easterly side of the race, and which are described in the conveyance as "that parcel of land situate in the village of Fulton, as the same is laid down on Peter Schenck's map of said village, made in 1844, with amendments in 1853, now on file in Oswego county clerk's office, viz., lots one and two, between the mill canal and Oswego canal on block 19." No water rights or covenants or conditions whatsoever relating to the mill canal or race are contained in this deed. The map referred to, however, shows these lots, one and two, to be bounded on the westerly side by the mill canal or race, and the defendants claim that by force of this circumstance they take to the centre of the mill-race.

In August, 1871, the plaintiffs received a conveyance from the common source of title, conveying to them the entire bed of the mill canal opposite their premises which are opposite lot two, so owned by the defendants. So that if the title to no part of the mill canal passed to the defendants under the conveyance of March 1854, then the plaintiffs are the owners of the entire bed of the mill canal so far as it is opposite to their premises, up to the easterly side or bank of such canal. The defendants have commenced to place shafting across the mill canal diagonally, so that a portion thereof occupies that part of the mill canal which was conveyed to the plaintiffs by the deed of August, 1871, but which belongs to the defendants in case they took title to the centre of the mill canal under the deed of March, 1854. To restrain the defendants from thus placing this shafting, the plaintiffs commenced this action. The referee has decided that the plaintiffs are the owners in fee of the *locus in quo*, and consequently that the defendants took no title to any part of the mill canal under the deed of

March, 1854.   We think the conclusion of the learned referee was correct.   As we understand the case, the mills were situated on the westerly side of the canal, and the water contained in the canal could not be used for power on the easterly side.   The points of the counsel for the defendants state that " there was no way of discharging water from the lots on the east side of their mill canal ; there was no wall and no gates on that side and no reason for any restrictions."   And such we understand to be the conceded facts of the case.   It is and was therefore obvious that this "mill canal" was merely an artificial reservoir designed to hold water for the mills, and to be for the use of the mills.   It may be conceded that if the mill canal had been a natural stream of water, the conveyances in this case would have carried the defendants' title to the *filum aquæ*.   This, however, is not always true, even in regard to natural streams.   As is said by the Court of Appeals in *Dunham* v. *Williams*, (37 *N. Y.* 250,) "The presumption in favor of an adjacent proprietor and of his successors in interest, is not a *presumptio juris et de jure*, but yields to the evidence displacing the grounds on which it rests."

It was therefore held in that case that the presumption that a conveyance to the centre line is intended, arises only where the grantor is owner of the fee to the centre line.   Much less does this presumption conclusively arise where the body of water is contained in an artificial reservoir, constructed for purposes wholly irrespective of any connection with the premises conveyed by the conveyances to which the presumption is sought to be applied, and when such a presumption would be inconsistent with the uses and purposes for which it is obvious the way or water reservoir was created.   The general principles upon this subject are thus stated in an elaborately considered case to which the appellants' counsel calls our attention : that of *The City of Boston*

Hoff *v.* Tobey.

v. *Richardson* (13 *Allen*, 146.)   The general rule of construction may be thus stated.   Whenever land is described as bounded by other land, or by a building or structure, the name of which, according to its legal and ordinary meaning, includes the title in the land of which it has been made a part, as a house, a mill, a wharf or the like, the side of the land or structure referred to is the limit of the grant; but where the boundary line is simply by an object, whether natural or artificial, the name of which is used in ordinary speech as defining a boundary, and not as describing a title in fee, and which does not in its description or nature include the earth as far down as the grantor owns, and yet which has width, as in a case of a way, a river, a ditch, a wall, a fence, a tree or a stake, the centre of the thing so running over or standing on the land is the boundary of the lot granted.   Here the claim of the defendants to go to the centre of the mill canal is based solely upon the fact that the map referred to in the conveyance under which they claim represents their premises as running to the westerly bounds of the canal.   On the same map the canal is laid down as the "Mill Canal."   It was manifestly an artificial construction intended solely for the use and benefit of the mills constructed on the east side of the canal, and the designation of it as the mill canal was a clear indication that the canal was intended for and appropriated to the mills, and was not intended as a mere boundary or division between the lots lying east and west of it.   The grantors were not the owners of the absolute fee.   By previous grants they had subjected the whole canal to certain easements for the benefit of the mills, and had bound the grantees of such easements to keep in repair the bridge over the whole width of the canal, and to repair the walls on the west side where such wall had been necessary on that side at the street crossings.

Since it is established that the presumption of an intent to convey to the centre of the object, upon which the land conveyed abuts, may be refuted by proof of extraneous circumstances which render such a presumption improbable, we think the surrounding circumstances which appear in this case are sufficient to rebut any presumption that the grantors in the deed, under which the defendants claim, intended to convey, by that deed, any rights in the mill canal. The cases to which we are referred by the appellants' counsel do not seem to require a contrary conclusion. The case of *Warner* v. *Southworth*, (6 *Conn.* 471,) was the case of a conveyance bounding on a ditch, and though the prevailing opinion asserts that in that case the ditch, having been made as a fence, was to be treated as a fence, and the grantee had title to the centre, yet the case was decided against the defendant on another ground. And even in that case, Peters, J., expressed the opinion that the deed, bounding the grantee on the ditch, gave him no title beyond the south side, and that the rule regarding watercourses was not applicable. In the case of *Dunkle* v. *The Welton R. R.* (24 *N. H.* 489,) the conveyance bounded the grantee on a race; this race was in fact an artificial race, but had been made by changing the channel of a natural stream. In the deed the race was described as, and called, the saw-mill brook, and the court held that the grantee took to the middle of the channel, upon the ground that the description of it as the "Saw-mill brook," amounted to a representation that it was a natural stream, or at least to an agreement that it should be considered as the natural channel, for the purposes of the conveyance. These cases, instead of requiring the deed under which the defendants claim, to be construed as conveyances to the centre of the mill canal or reservoir, furnish, as we think, a strong implication the other way.

On the whole, we think the case was correctly disposed of by the referee. And the judgment appealed from must be affirmed.

o                    Judgment affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin, Talcott* and *E. D. Smith*, Justices.]